# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE ANITA ANTHONY, | Case No. 1:21-cv-01604-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

_____/

## I.    INTRODUCTION

On November 3, 2021, Plaintiff Valerie Anita Anthony ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Acting Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.    BACKGROUND

Plaintiff was born on July 30, 1967, has an associate's degree in medical administration,

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 8.)

and previously worked as an administrative assistant, registration clerk, and coordinator of a skills training program. (Administrative Record ("AR") 36, 48, 62–65, 67, 380, 478–80, 510.) Plaintiff protectively filed a claim for DIB payments on July 16, 2017, alleging she became disabled on November 1, 2014,[2] due to degenerative disc and joint disease, bipolar disorder, manic depression, anxiety, a tumor in the neck, hypertension, neuropathy in the left leg, and coronary artery disease. (AR 17, 205, 380–87.)

A.   **Relevant Evidence of Record**[3]

   1.   **Medical Evidence**

Plaintiff has a history of hypertension and had a double carpel tunnel surgery in 2008. (AR 567, 574, 629.) Throughout 2016 to 2017, she frequently complained of pain in the lower back that radiated down her left leg as well as pain in her neck and upper extremities. (*See* AR 567, 569, 571, 580, 586, 590, 596, 602, 607, 612, 618.) In August 2016, she described the severity of the pain as a three out of ten with medication, and a ten out of ten without medication. (AR 612.) Plaintiff reported physical therapy was not successful, but epidural steroid injections provided her relief. (AR 607.)

A physical examination conducted by Nurse Practitioner Andrew Tang in November 2016 revealed abnormal range of motion as to the cervical spine. (AR 598.) Plaintiff's upper extremity neurological examination was normal. (*Id*.) In December 2016, Plaintiff continued complaining of neck pain, and Nurse Practitioner Tang ordered additional trigger point injections for the upper back and neck. (AR 593.) In February 2017, Plaintiff reported no significant change as to the pain in her neck and lower back. (AR 583.)

At a visit with Nurse Practitioner Tang in April 2017, Plaintiff stated that she went to the Emergency Department for chest pain and received an MRI. (AR 571.) A preliminary diagnosis of aortic outpouching/diverticula was made. (*Id*.) Plaintiff was referred to a cardiologist for an

---

[2] In a pre-hearing brief, Plaintiff requested that the alleged onset date be amended to July 1, 2014. (*See* AR 53, 518.) At the hearing, the ALJ noted that a previous ALJ issued an order of dismissal for the untimely filing of a request for a hearing involving a claim which was denied upon reconsideration on March 30, 2016. (AR 17, 53; *see also* AR 173–77.) Because that decision constituted a final decision, the ALJ determined that the applicable time period under consideration in the instant matter was March 31, 2016, through December 31, 2019. (AR 17, 53.)

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

additional workup and treatment considerations. (*Id*.) Plaintiff saw Dr. Sarabjeet Singh, M.D., at CCMC Central Cardiology in May 2017, and she was counseled to stop smoking. (AR 629-30.) Dr. Singh started Plaintiff on baby aspirin and noted that her stress test suggested mild apical ischemia. (AR 630.)

In March 2018, Plaintiff presented at a visit with Dr. Carmen Fischer, M.D., at the Pain Institute of Central California reporting neck pain. (AR 889.) Plaintiff estimated that the pain was at a seven out of ten and was aggravated by doing any type of activity in cold weather. (*Id*.) Dr. Fischer observed muscle tenderness bilaterally in the cervical spine and that Plaintiff had decreased range of motion by 50% in all planes. (*Id*.) Dr. Fischer assessed Plaintiff for several conditions, including cervical disc degeneration at C5-C6 level, pain in both shoulders, myofascial pain syndrome, and opioid dependence. (AR 890.) Plaintiff was again advised to stop smoking. (*Id*.) When Plaintiff saw Dr. Fischer in June 2018, she reported at least 50% relief from the trigger points and requested them again, but Dr. Fischer determined it was too early for her to receive the treatment again. (AR 883.)

At a visit with Dr. Fischer in November 2018, Plaintiff indicated her pain level was at an eight out of ten. (AR 877.) She received the trigger point injections that day, which were completed in the bilateral trapezius muscles with no apparent complications. (AR 878.) Plaintiff reported a seven out of ten pain and numbness in the left armpit upon seeing Dr. Fischer again in January 2019. (AR 875.) Dr. Fischer referred Plaintiff for an MRI of the cervical spine without contrast. (AR 876.) The MRI was conducted in March 2019, and revealed, among other things, degenerative change in the cervical spine with paraspinal muscle spasm and disc disease with degenerative changes at C3-C4 to C6-C7 levels causing varying degrees of central canal and neural foraminal stenosis. (AR 873–74.)

Plaintiff received epidural steroid injections in April and May 2019. (AR 869–70.) She reported that the injections did not provide much relief for her lower back pain, but instead caused pain. (AR 865.) An x-ray of Plaintiff's lumbar spine in June 2019 indicated moderate diffuse degenerative disc narrowing, but no transitional changes, spondylosis, and facet hypertrophic changes. (AR 867.)

3

### 2. Plaintiff's Adult Function Report

Plaintiff submitted a Function Report dated June 18, 2017. (AR 434–42.) She reported that the disc and joint disease in her neck limited her range of motion and caused chronic pain, as well as an inability to sit, stand, or raise her arms without strain. (AR 434.) On most days, it would take her up to two hours to do chores, and on some days, she was limited to bed all day. (AR 435.) Her pain kept her up at night or woke her up from sleep at least three to four times a week. (*Id.*) Plaintiff's conditions cause difficulties dressing and washing her hair during "'flare ups.'" (*Id.*) While Plaintiff is able to do some household chores occasionally depending on her pain level, she is unable to sweep the floors, clean the bathtub, and weed the yard. (AR 436.)

Plaintiff reported that pain hinders her ability to do many physical activities, and she could walk about half a block before needing to rest for about five to ten minutes. (AR 439.) It is painful for her to move up or down, or to sit or stand. (AR 441.) Plaintiff reported that her bipolar disease with manic depression often caused extreme anxiety, resulting in an inability to gain composure and secluding herself in bed for two or three days. (*Id.*) She stated that the neuropathy in her left upper thigh has caused total numbness, creating trouble walking or standing. (*Id.*) Plaintiff's coronary artery disease also caused heart palpitations and increased her anxiety. (*Id.*)

### B. Administrative Proceedings

The Commissioner denied Plaintiff's applications for benefits initially on October 24, 2017, and again on reconsideration on February 23, 2018. (AR 181, 205–208, 214–20.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 181, 221–22.)

On February 14, 2020, Plaintiff appeared telephonically with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 90–92, 100–129, 181.) A vocational expert ("VE") also testified at the hearing. (AR 129–37, 181.) In a decision dated March 3, 2020, an ALJ rejected Plaintiff's application for DIB payments, assessing a residual functional capacity ("RFC")[4] of sedentary work with additional physical restrictions. (AR 178–92.) Plaintiff sought

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's

review of this decision before the Appeals Council. (AR 301–303.) On September 8, 2020, the Appeals Council granted the request for review, vacated the ALJ's hearing decision, and remanded the case to an ALJ for further administrative proceedings. (AR 199–202.)

On remand, at a hearing held on April 8, 2021, Plaintiff again appeared telephonically with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 46–48, 62–83.) A medical expert[5] ("ME") (AR 53–61) and VE (AR 83–88) also testified at the hearing.

### 1.   ME's Testimony

At the hearing on April 8, 2021, the ME testified that he had a specialty in orthopedic surgery. (AR 55.) Based on the record in this case, the ME determined that Plaintiff had the following medically determinable impairments or conditions: degenerative disc disease and degenerative joint disease in the cervical spine and lumbar spine. (AR 56.) Pursuant to the ME's experience, education, training, and review of the medical evidence, the ME opined that Plaintiff's medical impairments, individually and/or in combination, did not meet the listed impairments provided by the Commissioner.[6] (AR 56.)

The ME testified that the record supported a light work exertional level and Plaintiff's medical impairments would be expected to result in the following functional limitations: lifting and carrying up to ten pounds frequently and up to 20 pounds occasionally; sitting, standing, and walking for six hours out of eight; overhead reaching, lateral reaching, handling, fingering, feeling, pushing, and pulling with the arms could be done bilaterally with no limitations; bilateral use of the feet for pushing, pulling, operations of things like pedals or levelers limited to frequently; climbing stairs and ramps, as well as kneeling and balancing, also limited to frequently; and climbing things like ladders and scaffolds, stooping, crouching, crawling, working in high, exposed, unprotected heights and working in proximity to heavy or moving machinery limited to occasionally. (AR 56–57.)

---

medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

[5] The ME testified at the hearing pursuant to the remand order by the Appeals Council. (*See* AR 16, 52, 201.)
[6] The Court presumes the ME was referring to the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

### 2. **Plaintiff's Testimony**

At the hearing on April 8, 2021, Plaintiff testified that she had not worked since July 2014, when she was employed as a workforce coordinator for a technical college in Seattle, Washington, which she described as a data entry type of job. (AR 62–63.) Plaintiff stated she had to stop working because she was struggling with a cane and due to the onset of a degenerative condition, causing her to call in sick often and take time off without pay. (AR 63.) Plaintiff did not attempt to find work after leaving that job. (AR 63.) She stated she was unable to sit in one place for 10 or 15 minutes and struggled to look down at the computer. (AR 64.)

Plaintiff testified that she had lived with her mother since 2014. (AR 65–66.) She helps her mother by grocery shopping and taking her mother to appointments with doctors. (AR 83.) Plaintiff has occasional difficulties driving, as her hands (primarily her right hand) go numb when steering the car, so she has to remove one or both hands from the wheel to shake them out. (AR 66.) In addition, to turn her upper back to the left or right, she must use her shoulders, not just her neck. (AR 66–67.)

Plaintiff described how several of her impairments had progressed negatively since she stopped working in 2014. (AR 68.) She stated her pain has progressed substantially from the top part of her neck all the way down to the bottom of her spine. (AR 68–69.) Her abilities to do daily activities such as walking or doing laundry have become "quite a challenge." (AR 69.) There are times where she is unable to do these kinds of activities, or it takes a large quantity of time to accomplish these activities. (*Id.*) Furthermore, Plaintiff testified that her hands were getting progressively worse. (*Id.*) Despite surgeries on both hands, her grip fails and her hands go numb and tingle, similar to the sensations she felt before the surgeries. (*Id.*) Often, she has pain in the back of her spine that radiates down her right leg almost down to the bottom of her foot. (*Id.*) In addition, she has neuropathy in her left thigh, and she sometimes struggles with numbness, tingling, irritation, and issues with walking, though she is able to walk, but often with a limp. (*Id.*)

Plaintiff estimated that she would not be able to stand for longer than half an hour before needing to take a break. (AR 70.) She is only able to sit for 10 minutes before either needing to

adjust or stand up to stretch her legs. (*Id*.) Plaintiff can lift maybe seven pounds. (*Id*.) If she tried to lift something more substantial, it would be painful, and she does not have the grip strength to hold onto an object for longer than a short distance. (AR 70–71.) Plaintiff also stated she had problems using her hands and fingers, because she loses her grip and drops things. (AR 71.) Her right hand has been going numb for the last two years or longer. (*Id*.) She used to crochet "all the time," but has been unable to do so for the last three years. (*Id*.)

Plaintiff testified that her spine gives her the most pain, as well as her neck and shoulder, particularly where the base of her neck meets her skull. (AR 71.) Activities that aggravate her pain included holding or writing with a pen, sitting and watching television, and doing dishes. (AR 71–72.) Cold weather also affects her pain. (AR 72.) Medications and things like a neck brace, ice packs, and heating pads occasionally help lessen the pain. (*Id*.)

Plaintiff estimated that she is only able to walk for about 20 minutes before needing to take a break. (AR 73.) Her providers' treatment plans at the time of the hearing were pain management, and surgeries were not being discussed as an option. (*Id*.) She occasionally feels relief from receiving trigger point shots in her neck, but the relief is temporary. (AR 73–74.)

Plaintiff stated that on a typical day, she is able to wash her face, brush her teeth and hair, and feed her cat. (AR 74.) She is often unable to wash the dishes or make her bed because of the pain. (*Id*.) Within the last two years, Plaintiff became unable to do any yardwork, sweep or vacuum the house, scrub the bathtub. (AR 75.) She also struggles to sleep through the night because of restless leg syndrome. (AR 76.) Lastly, Plaintiff smokes about one pack of cigarettes every three days and does not drink alcohol. (AR 78–79.)

**3.    VE's Testimony**

At the hearing on April 8, 2021, the VE classified Plaintiff's past work experience as follows: an administrative assistant, Dictionary of Occupational Titles ("DOT") code 169.167-010, with a specific vocational preparation (SVP)[7] level of 7 and a sedentary exertion level; a

---

[7] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

7

1 registration clerk, DOT code 205.367-042, which is sedentary work and SVP 3; and a coordinator
2 for a skilled training program, DOT code 169.167-062, which is sedentary work and SVP 6. (AR
3 84–85.)

4       The ALJ asked the VE to consider an individual of Plaintiff's age, education, and past
5 work experience and posed a first hypothetical about this person. (AR 85.) The VE was to assume
6 this person was limited to doing the full range of sedentary work. (*Id*.) The person was prohibited
7 from climbing ladders, ropes, or scaffolding; was limited to occasional climbing of ramps or
8 stairs, as well as occasional balancing, stooping, kneeling, crouching, or crawling; was limited to
9 occasional bilateral overhead reaching and frequent bilateral handling, fingering, and feeling; and
10 would need to avoid concentrated exposure to extreme heat, extreme cold, hazardous machinery,
11 unprotected heights, and open plains. (*Id*.) The VE testified that such a person could perform all
12 of Plaintiff's past work. (*Id*.) The VE testified that even if further limitations of only frequent
13 pushing or pulling with the lower extremities or only doing simple, routine, and repetitive tasks
14 were added, none of the jobs would be impacted. (*Id*.)

15       In addition, the VE testified that such a person could perform the following sedentary SVP
16 2 jobs: food and beverage clerk, DOT code 209.567-014, with approximately 16,000 jobs in the
17 national economy; final assembler, DOT code 713.687-018, with approximately 14,000 jobs; and
18 document preparer, DOT code 249.587-018, with approximately 40,000 jobs. (AR 86.) The VE
19 stated that employers have some tolerance from absenteeism, tardiness, and leaving early for
20 about one day per month, but absences more frequent than once a month would preclude all
21 employment. (*Id*.) Similarly, the VE testified that employers have a tolerance for activities where
22 the employee was off task for up to 9% of the day, but off-task activities for greater than that
23 percentage would preclude competitive employment. (AR 86–87.)

24       Plaintiff's attorney posed a hypothetical involving a person who was limited as follows:
25 lifting and carrying occasionally up to seven pounds, and frequently five pounds; sitting no more
26 than two hours in an eight-hour day; standing no more than one hour in an eight-hour day; and
27 only sitting, standing, or walking one hour without interruption during the daytime. (AR 87.)
28 The VE testified that these limitations would result in less than sedentary work, and would

preclude all competitive employment. (*Id.*) Plaintiff's attorney added a limitation of only occasional forward reaching, overhead reaching, bending, squatting, kneeling, and sitting. (*Id.*) The VE testified that the previously identified jobs would be eliminated. (*Id.*) These jobs would also be eliminated if a limitation of only occasional reaching, fingering, and handling was added. (AR 87–88.)

**C.   The ALJ's Decision**

In a decision dated May 13, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 16–38.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (*Id.*) The ALJ determined Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of November 1, 2014, through her last insured date of December 31, 2019. (AR 19.) At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, and obesity. (*Id.*) The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 23–24.)

The ALJ next assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your [RFC] . . . . We use this [RFC] assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined Plaintiff had the RFC:

> to perform sedentary work as defined in 20 [§] CFR 404.1567(a) except she is limited to frequent pushing and pulling with her lower extremities; she is prohibited from climbing ladders, ropes, or scaffoldings; she is limited to occasional climbing of ramps and stairs, and occasional balancing, stooping, kneeling, crouching, and crawling; she is limited to occasional overhead reaching and frequent handling, fingering, and feeling bilaterally; and she needs to avoid concentrated exposure to extreme heat and cold, and to hazardous machinery, unprotected heights and open flames.

(AR 25–36.)

Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ found Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms" to be "not entirely consistent with the medical

9

evidence and other evidence in the record." (AR 26.) The ALJ did not find that the medical evidence and findings in the record supported Plaintiff's allegations of disability, and her statements to healthcare professionals and State agency officials, as well as the record as a whole, supported the ALJ's findings. (AR 36.)

The ALJ found that Plaintiff is capable of performing past relevant work as an administrative assistant, registration clerk, and coordinator of a skills training program, and this work did not require the performance of work-related activities precluded by the RFC (step four). (AR 37.) The ALJ concluded that Plaintiff was not disabled from November 1, 2014, the alleged onset date, through December 31, 2019, the date last insured. (*Id*.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 16, 2021. (AR 1–7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

### III.     LEGAL STANDARD

#### A.     Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the [Act]." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [his or her] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his or her] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097. "Substantial evidence" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "'Substantial evidence is more than a mere scintilla but less than a preponderance.'" *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "'[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.'" *Ford*

*v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020); *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). The Court must instead determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts may not reverse an ALJ's decision on account of an error that is harmless. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). Harmless error "exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation marks omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV. DISCUSSION

Plaintiff contends that the ALJ impermissibly rejected her subjective symptom testimony. (Doc. 13 at 6–17.) She asserts that the ALJ merely discussed the objective medical evidence and provided a conclusory statement that the evidence did not support Plaintiff's testimony, instead of connecting Plaintiff's testimony to the analysis or offering any specific rationale for rejecting her testimony. (*Id*. at 10–11.) Accordingly, Plaintiff asks this Court to credit her testimony and award the immediate payment of benefits, or alternatively, remand for further proceedings. (*Id*. at 16–17.) The Acting Commissioner counters that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective symptom testimony. (Doc. 14 at 5–11.)

As discussed below, the Court reverses and remands for further administrative proceedings.

**A.     The ALJ Failed to Articulate "'Specific, Clear and Convincing Reasons'" to Discredit Plaintiff's Subjective Complaints**

**1.     Legal Standard**

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id*. If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if the ALJ gives "'specific, clear and convincing reasons'" for the rejection.[8] *Id*.

As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009) ("If an ALJ finds a claimant's characterization of his or her own symptoms unreliable, the ALJ must make a credibility determination backed up by specific findings."). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties "concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

---

[8] To preserve its position for any potential appeal, the Acting Commissioner contends that the "clear and convincing reasons" standard is inconsistent with the substantial evidence standard under 42 U.S.C. § 405(g). (*See* Doc. 14 at 5 n.4.) As the Acting Commissioner acknowledges, however, this Court is bound by Ninth Circuit precedent. (*Id*.) In any event, the Court rejects the Acting Commissioner's contention that a lesser standard of review applies.

13

demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

### 2.  Analysis

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 26.) The ALJ further determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id*.) Accordingly, the relevant inquiry before the Court is whether the ALJ provided "'specific, clear and convincing reasons'" in making the non-credibility determination. *Vasquez*, 572 F.3d at 591; *see, e.g.*, *Brown-Hunter*, 806 F.3d at 492–93 ("Where . . . the ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'").

As the Ninth Circuit in *Brown-Hunter* stated:

> We hold that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her [RFC] determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*Brown-Hunter*, 806 F.3d at 489. Thus, "'[g]eneral findings'" are not enough to satisfy the clear and convincing standard. *Id*. at 493. "'[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id*. Failure to do so constitutes legal error. *Id*. at 494.

The ALJ began its analysis by summarizing Plaintiff's symptom testimony and adult

disability report:

> In a June 7, 2017 adult disability report, [Plaintiff] alleged that degenerative disc and joint disease, bi-polar, manic depression, and anxiety, a 2cm lipoma tumor in her neck, hypertension, moderate length small fiber neuropathy in her left leg, estasia of the thoracic aorta, apical ischemia coronary artery disease, and methadone pain management limited her ability to work. (Ex. B3E, p 2). At the hearing, [Plaintiff] stated that when she stopped working, she had to change positions frequently and had problems looking down. She alleged that her symptoms had worsened. She complained of problems with her grip. She stated that she had surgery on both hands, and had a reduced grip and numbness in her hands. She stated that her right hand started going numb two years ago, and that three years ago she became unable to crochet. [Plaintiff] complained of pain in her entire spine, including her neck. She complained that pain from her spine radiated down her right leg. [Plaintiff] complained of neuropathy in her left leg at her kneecap. She stated that she has numbness and tingling in that leg. She stated that she sometimes walks with a cane several times a week, and that she uses a cane to stabilize herself when she goes out, as sometimes she has walked with a limp. [Plaintiff] estimated that she could stand for half an hour and sit for 10 minutes. She stated that she could lift approximately seven pounds. She stated that writing and doing dishes could exacerbate her pain. She stated that sometimes sitting could exacerbate her pain and that her pain was affected by cold weather. She testified that relief from her chronic pain was temporary. She testified that one to three times a day, she has to stop and lie down for 10 minutes.

(AR 26.) The ALJ then evaluated Plaintiff's statements:

> As for [Plaintiff's] statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because [t]he [RFC] adopted above accommodates [Plaintiff's] degenerative disc disease of the lumbar spine and obesity by providing for work at a sedentary level that does not require more than frequent pushing and pulling with her lower extremities, any climbing of ladders, ropes, or scaffoldings, more than occasional climbing of ramps or stairs, more than occasional balancing, stooping, kneeling, crouching, and crawling; and concentrated exposure to hazardous machinery, unprotected heights, and open flames. That [RFC] accommodates [Plaintiff's] degenerative disc disease of the cervical spine by providing for work at a sedentary level of exertion with the postural and environmental limitations described above that that does require more than occasional overhead reaching and frequent handling, fingering, and feeling bilaterally. Her medical records for the period under consideration show that she has reasonably been limited to work with those limitations.

(AR 26–27.) The ALJ then extensively discussed the medical evidence that formed the basis for the RFC finding. (AR 27–36.) The ALJ summarily concluded by stating: "In sum, the undersigned does not find that the medical evidence and findings in the record support [Plaintiff's] allegations of disability. Her statements made to health care professionals and State agency officials, and the record as a whole support the findings herein." (AR 36.)

The ALJ's analysis here is precisely what the Ninth Circuit deemed insufficient in *Brown-*

*Hunter*. Under *Brown-Hunter*, "the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, Case No. 1:15-cv-01110-SKO, 2016 WL 4138577, at *13 (E.D. Cal. Aug. 3, 2016). In this case, the ALJ discussed the relevant medical evidence but failed to link Plaintiff's symptom testimony to specific medical records and explain why the evidence contradicted her testimony. *See Holcomb v. Saul*, 832 Fed. Appx. 505, 506 (9th Cir. 2020). Significantly, the ALJ never mentioned Plaintiff's symptom testimony while discussing the relevant medical evidence. *See id*. Instead, the ALJ simply provided a conclusion that Plaintiff's statements as to the severity of her symptoms were inconsistent because the RFC determination accommodated her impairments. (*See* AR 26–27.) "Because the ALJ failed to identify the testimony [he] found not credible, [he] did not link that testimony to particular parts of the record supporting [his] non-credibility determination. This was legal error." *Brown-Hunter*, 806 F.3d at 494; *see also McKenzie v. Kijakazi*, Case No. 1:20-cv-0327 JLT, 2021 WL 4279015, at *12 (E.D. Cal. Sept. 21, 2021) (remanding for failure to link medical record to the plaintiff's subjective statements concerning her limitations).

The Acting Commissioner contends that the ALJ discredited Plaintiff's testimony because it was inconsistent with objective medical evidence in the record, her daily activities, and her "unremarkable level of treatment." (Doc. 14 at 6–8.) Accordingly, the Acting Commissioner asserts that the ALJ's reasoning in making the adverse credibility determination was sufficiently specific. (*Id.*) In carefully reviewing the ALJ's decision, however, it is apparent that the ALJ "did not specifically identify any such inconsistencies; [he] simply stated [his] non-credibility conclusion and then summarized the medical evidence supporting [his] RFC determination." *Brown-Hunter*, 806 F.3d at 494. Such conclusory language is falls short of setting forth "'specific, clear and convincing reasons'" for rejecting Plaintiff's complaints. *Vasquez*, 572 F.3d at 591; *see also Brown-Hunter*, 806 F.3d at 494 ("This is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited.").

Furthermore, the Court may not draw reasonable inferences or make *post hoc*

rationalizations regarding inconsistencies apparent from the ALJ's summary of the evidence. "[T]he credibility determination is exclusively the ALJ's to make, and [the Court's] only to review." *Brown-Hunter*, 806 F.3d at 494. Though the Court may "infer the ALJ's reasoning by examining the weight given to particular medical evidence," the Court is "'constrained to review the reasons the ALJ asserts,'" and "may not substitute [its] conclusions for the ALJ's or speculate as to the ALJ's reasoning." *Holcomb*, 832 Fed. Appx. at 506 (quoting *Brown-Hunter*, 806 F.3d at 492); *see also Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Because the ALJ failed to set forth clear and convincing reasons supported by substantial evidence, the credibility determination cannot be upheld. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination,' . . . or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter*, 806 F.3d at 494. Here, the Court cannot find the ALJ's error harmless, as crediting Plaintiff's testimony would likely have affected the RFC finding. *See also Holcomb*, 832 Fed. Appx. at 506 ("The ALJ's failure to specify the reasons for discrediting [Plaintiff's] symptom testimony was reversible error."). If, after evaluating *all* of Plaintiff's testimony, the ALJ assesses a more restrictive RFC, this could influence the ultimate nondisability determination. (*See, e.g.,* AR 87 (testimony by the VE that a limitation to occasional lifting and carrying up to seven pounds, and frequently five pounds, sitting no more than two hours in an eight-hour day, standing no more than one hour in an eight-hour day, and only sitting, standing, or walking one hour without interruption during the daytime would eliminate all competitive employment).)

**B.     The ALJ's Error Warrants Remand for Further Proceedings**

If the ALJ has erred, the Court evaluates "whether 'the record has been fully developed,'" "whether there are 'outstanding issues that must be resolved before a determination of disability can be made,'" and "whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014); *see also McAllister v. Sullivan*,

17

888 F.2d 599, 603 (9th Cir. 1989) (When an ALJ commits error that is not harmless, "[t]he decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court."); *accord Brown-Hunter*, 806 F.3d at 495 ("[W]e retain 'flexibility' in determining the appropriate remedy."). "Administrative proceedings are generally useful where the record 'has [not] been fully developed,' . . . there is a need to resolve conflicts and ambiguities, . . . or the 'presentation of further evidence . . . may well prove enlightening' in light of the passage of time." *Treichler*, 775 F.3d at 1101. "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. On the other hand, "an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed." *McKenzie*, 2021 WL 4279015, at *17 (citing *Varney v. Sec'y of Health & Human Serv.,* 859 F.2d 1396, 1399 (9th Cir. 1988)).

Here, the ALJ committed legal error that was not harmless by failing to provide clear and convincing reasons for discrediting Plaintiff's subjective symptom complaints. Because this error can be remedied on remand, further administrative proceedings serve a useful purpose. *See, e.g.*, *Brown-Hunter*, 806 F.3d at 495–96 (remanding for further proceedings where the record raised "crucial questions" about the extent to which the plaintiff's pain and accompanying symptoms rendered her disabled); *Treichler*, 775 F.3d at 1105 ("[T]he record raises crucial questions as to the extent of [the plaintiff's] impairment given inconsistencies between his testimony and the medical evidence in the record. These are exactly the sort of issues that should be remanded to the agency for further proceedings."); *McKenzie*, 2021 WL 4279015, at *17 ("The matter may be remanded [for] further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony.").

Although the ALJ failed to properly reject Plaintiff's credibility using the proper legal standards, it is not clear that Plaintiff would be found to be disabled if her testimony were credited as true. For example, the ALJ's re-evaluation of Plaintiff's testimony may reveal that a more restrictive RFC is appropriate. Therefore, the Court will order the matter remanded for the ALJ to re-evaluate the evidence and set forth findings supported by substantial evidence. *See McKenzie*, 2021 WL 4279015, at *17.

### V.	CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.

The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Valerie Anita Anthony and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **May 30, 2023**                             /s/ *Sheila K. Oberto*                
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE